IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH MALIK MILLER<br><br>v.<br><br>MICHAEL M. WENEROWICZ | CIVIL ACTION<br><br>NO. 12-CV-1720 |

**MEMORANDUM**

Plaintiffs are Kenneth Miller, an incarcerated husband, and Tina Miller, his civilian wife, who bring claims against Defendant, the warden of the Grateford State Correctional Institution, for denying Kenneth Miller permission to marry Tina for one year. Plaintiffs bring claims under 42 U.S.C. § 1983 for violation of their right to marry without due process, under the Fourteenth Amendment, and for retaliation against their attempts to exercise that right. Plaintiffs also claim tortious interference of a settlement agreement of an unrelated lawsuit brought by Kenneth Miller.

**I.    BACKGROUND**

Plaintiffs aver they initially sought marriage in January 2011, but Kenneth Miller was unable to obtain leave from prison to apply for a marriage license in the presence of a courthouse official. Kenneth had a pending court date before Judge Baylson for an unrelated matter on March 17, 2011, and asked Judge Baylson to facilitate the marriage license. Although Judge Baylson arranged for Plaintiffs to sign the marriage license at the courtroom, he could not officiate the marriage ceremony due to the three-day mandatory waiting period. The parties then settled the case. Kenneth Miller avers that he agreed to negotiate a settlement because Defendant

1

promised he would permit Plaintiffs to marry.  Under the terms of the settlement, Kenneth was transferred from Huntington to Graterford prison.

Kenneth submitted a request for marriage to Defendant in April 2011.  On May 27, 2011 Defendant denied Plaintiffs' request and told them to wait six months, during which time Plaintiffs' $80 marriage license expired.  In November 2011, Defendant again denied Plaintiffs' request for permission to marry, and said he would revisit the issue in a year if Kenneth continued to show "positive adjustment." (ECF No. 4B).  On December 9, 2011, Kenneth submitted a grievance against Defendant.  The grievance was initially denied on January 4, 2012, because the unit manager found it reasonable to require Plaintiffs to wait one year to reapply.  Kenneth appealed the grievance decision on January 10, 2012 to the superintendent of the prison, who is also Defendant in this case. (ECF No. 4B).  In the grievance appeal decision on January 31, 2012, Defendant wrote "I requested that this marriage be put on hold for one year until we can verify whether you require any mandatory sexual treatment program based on" a misconduct incident on February 23, 2010 where Plaintiff plead guilty to the charge of exposing himself to a female prison employee.  (ECF No. 4B).  The provision in the Pennsylvania Department of Corrections Administrative Directives, DC-ADM 821, providing for mandatory sexual treatment where appropriate was added on January 20, 2012. (ECF No. 4C).  Defendant wrote that Kenneth's unit team found he did not require a sexual treatment program, and wrote Kenneth could reapply for permission to marry.  Plaintiffs received approval to marry on March 20, 2012, and Plaintiffs eventually married on April 23, 2012.

Tina Miller avers that she purchased weddings rings that she had to return, lost wages, and suffered emotional injury, including depression, anxiety, and mental anguish.

Plaintiffs bring claims for violation of their constitutional right to marry under 42 U.S.C. § 1983, retaliation against them for their attempt to exercise their constitutional right to marry, and tortious interference with a contract. Defendant moves to dismiss the complaint. At oral argument on the motion to dismiss, Plaintiffs' attorney declared Plaintiffs would not pursue their claims for retaliation or tortious interference. (ECF No. 34).

## II.  THE PARTIES' ARGUMENTS

Defendant contends Plaintiffs' claims should be dismissed for four reasons:

1. Plaintiffs' § 1983 claims are barred under the Prisoner Litigation Reform Act, because they do not allege any physical harm. Plaintiffs respond that Tina Miller's claims are not barred, but made no argument regarding the limitations on Kenneth Miller's claims.

2. The factual allegations do not support a Fourteenth Amendment claim for deprivation of the right to marry without due process, because the denial of permission to marry was based on valid penological reasons. Plaintiffs respond that prisoners have a constitutional right to marry.

3. Qualified immunity bars Plaintiffs' § 1983 retaliation claims. Plaintiffs' counsel represented to this Court Plaintiffs will not pursue this claim.

4. Sovereign immunity bars Plaintiffs' claims for tortious interference with a contract. Plaintiffs' counsel represented to this Court Plaintiffs will not pursue this claim.

## III.    ANALYSIS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 562 n.8 (2007). When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. PrudenTinal-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).

**A. Prisoner Litigation Reform Act**

Under the Prisoner Litigation Reform Act (PLRA): "No Federal civil action [for monetary relief] may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C.A. § 1997e(e). "However, § 1997e(e) does not bar claims seeking nominal damages to vindicate constitutional rights, nor claims seeking punitive damages." Doe v. Delie, 257 F.3d 309, 314 n.13 (3d Cir. 2001).

In Allah v. Al-Hafeez the only compensatory damages the plaintiff alleged for First Amendment violations were for mental or emotional injuries. 226 F.3d 247, 251 (3d Cir. 2000). Although compensatory damages were barred by § 1997e(e), the Third Circuit held the claim was not barred because the plaintiff could recover nominal and punitive damages for the alleged constitutional violation. Id. (noting "the Supreme Court recognized in both Carey and Stachura that certain absolute constitutional rights may be vindicated by an award of nominal damages in the absence of any showing of injury warranting compensatory damages."). Punitive damages are available "in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally

4

protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). Punitive damages may be awarded in § 1983 actions even when a jury does not find actual damages. Alexander v. Riga, 208 F.3d 419, 431 (3d Cir. 2000).

Defendant correctly argues that the complaint does not allege any physical injury, so the PLRA precludes Kenneth Miller from recovering compensatory damages for emotional injuries. But limiting recovery does not bar the entire claim for the alleged constitutional violations. Plaintiffs could recover nominal, and possibly punitive damages, on their claims for deprivation of their constitutional rights. Moreover, § 1997e(e) only applies to incarcerated claimants, and has no bearing on Tina Miller's claims. Accordingly, Plaintiffs' claims are not barred by 42 U.S.C. § 1997e(e).

**B. Fourteenth Amendment**

The right to marry "is a central part of the liberty protected by the Due Process Clause." Zablocki v. Redhail, 434 U.S. 374, 384 (1978). The Supreme Court held prison regulations that limit constitutional rights are not unconstitutional when they bear a rational relation to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 96 (1987) (finding a "constitutionally protected marital relationship in the prison context."). In determining whether a prison regulation that infringes on a fundamental right is reasonable, a court must decide:

> (a) [w]hether there is a "valid rational connection" between the regulation and a legitimate and neutral governmental interest put forward to justify it ...; (b) whether there are alternative means of exercising the asserted constitutional right ...; (c) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, on an inmates' liberty, and on the allocation of limited prison resources ...; and (d) whether the regulation represents an "exaggerated response" to prison concerns....

Id. at 95.

In Turner v. Safley, the Supreme Court held a Missouri prison regulation prohibiting marriage without a finding by the prison superintendent that there were compelling reasons for the marriage violated the Due Process Clause. Id. at 97. The Court held the policy was not based on valid penological reasons. Id. at 97-98 (noting "prison officials may regulate the time and circumstances under which the marriage ceremony itself takes place"). The broad regulation was not justified by security concerns, and was an exaggerated response to concerns about "love triangles" igniting violence. Id. Moreover, there was an easy alternative to the policy, by allowing marriage unless the warden found a specific security or safety concern. Id. "After Turner, a complaint based on prisoners' interest in marriage states a claim; a legitimate penological justification for refusing to allow the marriage is a defense that cannot be adjudicated under Rule 12(b)(6)."[1] Martin v. Snyder, 329 F.3d 919, 921 (7th Cir. 2003).

In Martin the Seventh Circuit found it was not unreasonable to delay marriage because the inmate's behavior caused his visitation privileges to be revoked. Id. at 922. But Judge Waldman of this District reached the opposite conclusion in a case where the inmate's fiancé was barred from visitation because she had attempted to pass marijuana to the prisoner during a prior visit. Buehl v. Lehman, 802 F. Supp. 1266, 1271 (E.D. Pa. 1992). Although it was reasonable to deny general visitation privileges, the defendants "have not undertaken a Turner analysis of the policy of precluding one-time limited physical access to exercise the right to marry to one otherwise denied general visiting privileges, or presented evidence pertinent thereto." Id. ("[A] fair reading of the complaint suggests that defendants are depriving plaintiffs

---

[1] Defendant contends there is no case supporting a constitutional violation for delay of marriage, rather than denial. But Plaintiffs' complaint alleges Defendant repeatedly denied them permission to marry for no valid penological reason. The fact that Defendant eventually relented does not mean that they could not state a claim for a violation of their rights to marry for that twelve-month period. Moreover, plaintiffs can bring claims for delay in marriage alone. See Ammons v. Burkham, 202 F.3d 272 (7th Cir. 1999) ("Although the complaint details only five months of delay, it does not negate the possibility that delay continued after the last date mentioned in the pleading."). But cf. Lambert v. Meyers, 99 C 50076, 2004 WL 1452423 (N.D. Ill. June 28, 2004) (finding delay of only one month "does not constitute a meaningful denial of his right to marry.").

of their right to marry when the exercise of that right could be easily accommodated with minimal institutional or penological impact.").

Defendant contends that his decision was based on a valid reason related to Kenneth Miller's behavior, which is why Defendant delayed permission pending a sexual treatment program. But, as Plaintiffs note, the provision in the DC-ADM 821 regarding sexual treatment programs was not added until January 20, 2012, and the program was not mentioned as a reason for delaying marriage until 2012. (ECF No. 4B). Moreover, the Seventh Circuit held "a legitimate penological justification for refusing to allow the marriage is a defense that cannot be adjudicated under Rule 12(b)(6)." Martin, 329 F.3d at 921. Although evidence may reveal Kenneth Miller's behavior was a valid penological reason for the denial, and there was no easy accommodation available, the complaint pleads facts sufficient to infer there was no valid penological reason for repeatedly denying Plaintiffs permission to marry for twelve months.

### C. Retaliation & Tortious Interference With a Contract

At oral argument on Defendant's motion to dismiss, Plaintiffs' counsel stated his clients would not pursue their claim for retaliation or tortious interference with a contract. Accordingly, this Court will grant Defendant's motion to dismiss these claims.

### IV. CONCLUSION

This Court will deny Defendant's motion to dismiss, because Plaintiffs' complaint pleads sufficient facts to state a claim for deprivation of their right to marry. Based on the representations of Plaintiffs' counsel they will not pursue their claims for retaliation or for

tortious interference with a contract, this Court will grant Defendant's motion to dismiss as to Count II and Count III.

O:\Julie\Miller v. Wenerowicz, No. 12-1720\Miller Memo MTD 2.docx